IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REKEISHA DEMMONS,

        Plaintiff,

    v.

FULTON COUNTY, d/b/a the Fulton
County Sheriff's Department,
MYRON E. FREEMAN, individually and in
his official capacity as the former Fulton
County Sheriff,
LIEUTENANT RONNIE WYATT,
individually and in his official capacity as
Lieutenant of Fulton County Sheriff's
Department,
CAPTAIN JEROME HULL, individually
and in his official capacity as Captain of the
Fulton County Sheriff's Department, and
CAPTAIN BENITA WALLACE,
individually and in her official capacity as
Captain of the Fulton County Sheriff's
Department,

        Defendants.

CIVIL ACTION FILE

NO.  1:09-CV-2312-TWT-WEJ

## **FINAL  REPORT  AND  RECOMMENDATION**

On July 23, 2009, plaintiff, Rekeisha Demmons, an employee of the Fulton

County Sheriff's Department ("FCSD"), instituted this action in the State Court of

Fulton County, Georgia, against her employer, Fulton County, d/b/a the FCSD; the

former Sheriff of Fulton County, Myron E. Freeman; and three FCSD officers–Lieutenant Ronnie Wyatt, Captain Jerome Hull, and Captain Benita Wallace.  (See Compl., attached as Ex. A to Notice of Removal [1].)

On August 24, 2009, defendants Fulton County, Freeman, and Wallace filed a Notice of Removal in this Court.[1]  The Notice of Removal includes plaintiff's 178

---

[1] Although filed by three of the five named defendants, the Notice of Removal asserts that "[a]ll known Defendants consent to, expressly authorize, and join in this removal." (Not. of Removal ¶ 6.)  When an action involves multiple defendants, the right of removal is subject to the unanimity rule, which mandates that "all defendants must consent to removal." Russell Corp. v. Am. Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  Despite the assertion in the Notice of Removal, there is a question whether all defendants who had been served at the time of its filing consented.  See 14C Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3730 (4th ed. 2009) ("[A]ll of the defendants in the state court action must consent to the removal, and the notice of removal must be signed by all of the defendants, although other forms of manifested consent may be acceptable to the federal court.").  Defendant Hull's filing of an Answer [4] here on August 27, 2009, may constitute consent to removal. See Williams v. Benicorp Ins. Co., 190 F. Supp. 2d 1379, 1381 (M.D. Ga. 2002) (defendant that failed to join a notice of removal, but filed answer five days after removal, affirmatively indicated assent to removal, making remand unwarranted), aff'd, 82 F. App'x 223 (11th Cir. 2003).  In any event, possible violation of the unanimity rule is not grounds for a sua sponte remand, because it constitutes a procedural defect that does not defeat this Court's subject matter jurisdiction.  Cf. Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1237 n.1 (11th Cir. 2008) (untimely removal not fatal to district court's jurisdiction because it is procedural, not jurisdictional, defect).  Because plaintiff did not challenge this procedural defect within 30 days after the filing of the Notice of Removal as required by 28 U.S.C. § 1447(c), this ground for remand has been waived.  Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006); Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003).

2

paragraph, fourteen-count Complaint.   Count I of that Complaint accuses all

defendants of sexual harassment in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").   In Count II, plaintiff

alleges that all defendants violated her rights under the Equal Protection Clause of

the Fourteenth Amendment (as enforced through 42 U.S.C. § 1983) by committing

sexual harassment.   Count III charges Fulton County, Freeman, and Wallace with

retaliation in violation of Title VII.   (There is no Count IV.)   In Count V, plaintiff

accuses Wyatt and Hull of creating, and Fulton County, Freeman, and Wallace of

allowing, a sexually hostile work environment.[2]   Count VI alleges that Fulton County

and Freeman ratified the misconduct of Wyatt, Hull, and Wallace through their

inaction.[3]   Counts IX and X accuse Hull of intentional and negligent infliction of

emotional distress, respectively.   Finally, the last two substantive counts accuse

---

[2] Although Count V uses words (i.e., hostile work environment) normally associated with a Title VII claim, the federal statute is not cited therein; defendants interpret this Count as asserting a state law tort claim.   Plaintiff does not assert otherwise.  The Court concurs with defendants.  If, however, plaintiff meant to assert a Title VII claim in Count V, it would be redundant of Count I.

[3] In Counts VII and VIII, plaintiff assert claims of battery and assault, respectively, against Wyatt.  Because Wyatt has not been served and should be dismissed (see infra Part III. A. 1.), the Court does not address those claims herein. For that same reason, the Court does not address plaintiff's intentional (Count IX) and negligent (Count X) infliction of emotional distress claims against Wyatt.

Fulton County of negligent retention and supervision of Wyatt (Count XI)[4] and Hull (Count XII).   Plaintiff seeks, <u>inter alia</u>, attorney's fees (Count XIII), punitive damages (Count XIV), and actual and compensatory damages (<u>id.</u> Prayer for Relief).

Following a period of discovery, all defendants (except Wyatt) filed motions for summary judgment.  (<u>See</u> Defendant Captain Jerome Hull's Motion for Summary Judgment [56]; Defendants Fulton County, Former Sheriff Myron Freeman and Captain Benita Wallace's Motion for Summary Judgment [58].)  For the reasons explained below, the undersigned **RECOMMENDS** that both Motions be **GRANTED**.

---

[4] Although a parenthetical in the heading of Count XI assigns responsibility for the negligent retention and supervision of Wyatt to both Fulton County and Wyatt, that is obviously a drafting error.  The similar assertion in Count XII alleging negligent retention and supervision of Hull assigns responsibility only to Fulton County, not to Fulton County and Hull.  Morever, the employer, not the employee, is responsible in a negligent retention/supervision claim.  <u>See</u> <u>Farrell v. Time Serv., Inc.</u>, 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001).  Thus, the Court disregards any attempt to hold Wyatt liable for failure to supervise himself.  In any event, this point is moot because plaintiff abandoned this negligent retention/supervision claim.  (<u>See</u> <u>infra</u> Part III. B. 1.)

4

## I.   <u>STATEMENT OF FACTS</u>

In support of his Motion for Summary Judgment, defendant Hull filed a Statement of Material Facts to Which There Is No Genuine Issue [56-2] ("Hull's SMF").  <u>See</u> N.D. Ga. R. 56.1(B)(1).  Likewise, in support of their Motion for Summary Judgment, defendants Fulton County, Freeman, and Wallace filed their Statement of Material Facts to Which There Are No Genuine Issues to be Tried [58-2] ("Defs.' SMF").

Ms. Demmons submitted her Response to Defendant Captain Jerome Hull's Statement of Material Facts as to Which There Are no Genuine Issues to be Tried [68] ("Pl.'s Resp. Hull's SMF").  <u>See</u> N.D. Ga. R. 56.1(B)(2)(a).  Similarly, she submitted a Response to Defendants Fulton County, Former Sheriff Myron Freeman and Captain Benita Wallace's Statement of Material Facts to Which There Are no Genuine Issues to be Tried [64] ("Pl.'s Resp. Defs.' SMF").

As required by Local Rule 56.1(B)(2)(b), plaintiff submitted statements of additional facts which she contends are material and present a genuine issue for trial–one directed at defendants Fulton County, Freeman, and Wallace (<u>see</u> Plaintiff Rekeisha Demmons' Statement of Material Facts as to Which There Exists Genuine Issue to be Tried [65] ("PSAF re Defs.")), and the other directed at defendant Hull

5

(see Plaintiff Rekeisha Demmons' Statement of Material Facts as to Which There Exists Genuine Issue to be Tried [69] ("PSAF re Hull")).

As required by Local Rule 56.1(B)(3), defendants filed responses to Ms. Demmons's statements of additional fact. (See Defendants Fulton County, Myron Freeman and Benita Wallace's Response to Plaintiff's Statement of Material Facts as to Which There Exists Genuine Issue to be Tried [70-1] ("Defs.' Resp. PSAF"); Defendant Captain Jerome Hull's Response to Plaintiff's Statement of Material Facts as to Which There Exists a Genuine Issue [71-1] ("Hull's Resp. PSAF").)

In those instances where a party admits the truth of a proposed fact, the Court deems it undisputed for purposes of this Report and Recommendation. In those instances where a party denies a proposed fact, the Court reviews the record to determine whether the proposed fact is disputed and, if so, whether it is material.[5] Where a proposed fact is supported by the record cited, and the opposing party's denial or objection is without merit, the Court deems the proposed fact admitted. See N.D. Ga. R. 56.1(B)(2)(a)(2), (B)(3). Where necessary, the Court incorporates facts from its review of the record.

---

[5] The Court has not included some proposed facts because they are immaterial. (Defs.' SMF ¶¶ 25, 39, 55, 68-69, 81-82; Hull's SMF ¶¶ 9-10, 12-13; PSAF re Defs. ¶¶ 14-17, 23, 25-44, 57, 59-73, 94-95; PSAF re Hull ¶¶ 14, 16-29.)

6

A.     **The Parties**

Ms. Demmons became employed with the FCSD as a Security Specialist in 2001.  (Defs.' SMF ¶ 1; Pl.'s Resp. Defs.' SMF ¶ 1; <u>see also</u> PSAF re Defs. ¶ 1; Defs.' Resp. PSAF ¶ 1; PSAF re Hull ¶ 1; Hull's Resp. PSAF ¶ 1.)[6]  She received a promotion to Detention Officer I in 2003.  (Defs.' SMF ¶ 4; Pl.'s Resp. Defs.' SMF ¶ 4; <u>see also</u> PSAF re Defs. ¶ 2; Defs.' Resp. PSAF ¶ 2; PSAF re Hull ¶ 2; Hull's Resp. PSAF ¶ 2.)[7]  Plaintiff has remained in that position since 2003.  (Defs.' SMF ¶ 79.)[8]

Mr. Freeman was the Sheriff of Fulton County from January of 2005 to December 31, 2008.  (Defs.' SMF ¶ 23; Pl.'s Resp. Defs.' SMF ¶ 23.)  As an elected official, Mr. Freeman maintained managerial control of the FCSD.  (Defs.' SMF ¶ 24; Pl.'s Resp. Defs.' SMF ¶ 24.)  During Mr. Freeman's tenure as Sheriff, the FCSD

---

[6] As a Security Specialist, plaintiff worked in visitation and records at the Fulton County Jail (the "Jail").  (Defs.' SMF ¶ 2; Pl.'s Resp. Defs.' SMF ¶ 2.)  In visitation and records, Ms. Demmons signed up individuals for visitation with the inmates, answered the telephones, and rang the charges.  (Defs.' SMF ¶ 3; Pl.'s Resp. Defs.' SMF ¶ 3.)

[7] As Detention Officer I, Ms. Demmons worked in housing, inactive records, and intake at the Jail.  (Defs.' SMF ¶ 5; Pl.'s Resp. Defs.' SMF ¶ 5.)

[8] Plaintiff's denial of the above-stated fact is not supported by any record evidence.  (Pl.'s Resp. Defs.' SMF ¶ 79.)  Thus, the Court deems it admitted.

7

employed approximately 1,400 people per year. (Defs.' SMF ¶ 26; Pl.'s Resp. Defs.' SMF ¶ 26.)

In 2007 and 2008, Mr. Wyatt served as a Lieutenant in the FCSD. (Defs.' SMF ¶ 7; Pl.'s Resp. Defs.' SMF ¶ 7.) Lieutenant Wyatt was a unit manager responsible for the day to day operations of the floor. (Defs.' SMF ¶ 8; Pl.'s Resp. Defs.' SMF ¶ 8.)

Mr. Hull served as a Captain in the FCSD. (Defs.' SMF ¶ 9; Pl.'s Resp. Defs.' SMF ¶ 9.) Captain Hull was the supervisor at the Grady Hospital Detention Unit. (Defs.' SMF ¶ 10; Pl.'s Resp. Defs.' SMF ¶ 10; <u>see also</u> Hull's SMF ¶ 1; Pl.'s Resp. Hull's SMF ¶ 1.)

Ms. Wallace began as a Deputy Sheriff with the FCSD in 1988, and was subsequently promoted to Sergeant, Lieutenant, and then to Captain in 2002. (Defs.' SMF ¶¶ 11-12; Pl.'s Resp. Defs.' SMF ¶¶ 11-12.) From approximately the spring of 2008 to September 2009, Captain Wallace served as the watch commander at the Jail on the 7:00 a.m. to 3:00 p.m. shift. (Defs.' SMF ¶ 13; Pl.'s Resp. Defs.' SMF ¶ 13.) As watch commander, Captain Wallace was responsible for all activities that took place at the Jail during her shift. (Defs.' SMF ¶ 14; Pl.'s Resp. Defs.' SMF ¶ 14.)

### B.    Fulton County's Sexual Harassment Policy

As part of her new hire orientation in 2003, plaintiff received a copy of Fulton County's Anti-Harassment/Sexual Harassment Policy (hereafter "sexual harassment policy"). She executed a document certifying that she had received and comprehended the policy. (Defs.' SMF ¶ 6.) Plaintiff denies the preceding statements, asserting that she did not receive sexual harassment training when she was hired and that she saw a copy of the sexual harassment policy in 2009 when she attended training. (Pl.'s Resp. Defs.' SMF ¶ 6; see also PSAF re Hull ¶¶ 3-4; PSAF re Defs. ¶¶ 3-4; Defs.' Resp. PSAF ¶¶ 3-4.) Defendants' proposed fact is supported by the record cited. Plaintiff's assertion that she did not receive sexual harassment training in 2003 fails to controvert defendants' contention that she received a copy of the sexual harassment policy at new employee orientation.[9] Moreover, plaintiff's contention that she saw a copy of the sexual harassment policy at training in 2009 does not contradict defendants' contention that one was given to her in 2003. Because plaintiff's denials fail to contradict defendants' proposed fact, the Court deems Defs.' SMF ¶ 6 admitted.

---

[9] When confronted with her signature on the form by which she had acknowledged receipt and understanding of the sexual harassment policy, plaintiff stated, "I can't remember 2003." (Demmons Dep. [61] 25 & Ex. 1.)

9

The Fulton County sexual harassment policy provides in relevant part as follows:

**STATEMENT OF POLICY:**

In an effort to foster a working environment which enhances productivity and promotes the mutual respect and personal dignity of all Fulton County employees, the Board of Commissioners, the County Manager and Department Heads are herein committed to a policy which ensures that employees are not subjected to harassment, including sexual harassment, in the work place. The following policy and procedures are designed to strictly prohibit any and all forms of harassment, including sexual harassment, by supervisory officials, co-employees, non-employees, same sex employees, or clients and/or customers. In addition to the prohibition against sexual harassment, the policy also *specifically* prohibits harassment on the basis of race, color, age, sex, national origin, religion, disability, and sexual orientation. It is the policy of Fulton County to ensure compliance with all state and federal laws and regulations prohibiting all harassment, including sexual harassment.

. . .

**DEFINITION(S) OF SEXUAL HARASSMENT**

The term "Sexual Harassment" encompasses a wide variety of activities, etc. The term includes physical assaults or physical conduct that is sexual in nature; unwelcome sexual advances or comments, requests for sex, requests for sexual activities linked to one's employment or advancement (regardless of whether such requests are accompanied by promises or threats); sexual displays or publications such as sexually explicit calendars, cartoons or graffiti; other verbal or physical conduct of a sexual nature which has the purpose or effect of interfering with an individual's work performance, or which is severe

10

and/or pervasive enough to create an intimidating, hostile or offensive work environment.

Examples of conduct which may rise to the level of sexual harassment include, but are not limited to, sexual propositions, sexual innuendo, sexually suggestive comments, obscene gestures, pressure for sexual activity by supervisors or between employees, inappropriate touching or brushing of the body, coerced sexual intercourse or other sexual conduct, sexually suggestive inquiries about an employee's sexual practices or habits, sexually suggestive or insulting sounds, sexual patting or pinching, sexual remarks about a person's clothing or body, sexual jokes about gender-specific parts, foul or obscene language or gestures, posting of nude or sexually suggestive pictures, calendars, jokes or cartoons, or sending any of the above via any form of correspondence, including voice mail and/or electronic mail (e-mail).

## PROCEDURES FOR INVESTIGATING ALL COMPLAINTS OF HARASSMENT, INCLUDING SEXUAL HARASSMENT

The Fulton County Office of Equal Employment Opportunity (hereinafter "Office of EEO") shall have the responsibility for investigating complaints of harassment, including sexual harassment. Such complaints shall have priority and shall generally be resolved within 45 days of the filing of a complaint.

Any employee, regardless of position, who believes that (s)he has been subjected to harassment, including sexual harassment, by anyone, including supervisors, managers, co-employees, clients and/or customers **must** file a written complaint with the Office of Equal Employment Opportunity, 141 Pyror Street, SW, Suite 2043, Atlanta, Georgia 30303. . . . Complaints shall include a description of the alleged behavior complained of, the date(s) of the alleged behavior, the identity of the person committing the alleged harassment and the name of any person(s) who may have knowledge of facts or circumstances surrounding the facts which form the basis of the complaint. . . .

11

Employees *do not* have to report harassment, including sexual harassment, to their immediate supervisor or go through their supervisory chain of command before notifying the Office of EEO or the EEOC.  *In fact, employees are specifically authorized to bypass their supervisors (and supervisory chain of command) and go straight to the Office of EEO or the EEOC to file a complaint of harassment, including sexual harassment.*  A complaint of harassment, including sexual harassment, will be confidential to the degree possible during the investigation.

(Harris Dep. [58-11] 49-55 & Ex. 16 (copy of sexual harassment policy dated Nov. 6, 2002).)  The FCSD's sexual harassment policy is identical to Fulton County's policy.  (Def.'s SMF ¶¶ 18, 22.)[10]  As Sheriff, Mr. Freeman was responsible for ensuring that employees under his supervision complied with this policy.  (PSAF re Defs. ¶ 80; Defs.' Resp. PSAF ¶ 80.)

### C.   Dissemination of the Sexual Harassment Policy

#### 1.   The Individual Defendants

As sworn officers of the FCSD, defendants Wyatt, Hull and Wallace were required to receive Georgia Peace Officer's Standard and Training Council ("P.O.S.T.") mandate training and to receive P.O.S.T. certification.  (Def.'s SMF ¶ 15; Pl.'s Resp. Defs.' SMF ¶ 15.)  The FCSD required defendants Wyatt, Hull, and

---

[10] Although plaintiff disputes defendants' proposed facts (see Pl.'s Resp. Defs.' SMF ¶¶ 18, 22), her denials fail to controvert them.  Accordingly, the Court deems Defs.' SMF ¶¶ 18 and 22 (which are identical) admitted.

Wallace, as P.O.S.T. certified officers, to complete at least forty hours of In-Service Training annually, twice the number of hours required to maintain P.O.S.T. certification.  (Def.'s SMF ¶ 16; Pl.'s Resp. Defs.' SMF ¶ 16.)

The parties dispute whether the FCSD's sexual harassment policy was addressed during those In-Service Training sessions.  (Compare Defs.' SMF ¶ 17, with Pl.'s Resp. Defs.' SMF ¶ 17.)[11]  Plaintiff also points to testimony from a senior employee of the Fulton County Office of Equal Employment Opportunity and Disability Affairs ("OEEO"), Tilford Belle, who reported that from 2004 through 2008, the FCSD was not providing mandatory sexual harassment training.  (Belle Dep. [45] 74.)  This dispute is not material.

As for Lieutenant Wyatt, he attended a P.O.S.T. training session on sexual harassment at the Georgia Law Enforcement Training Center taught by Mr. Belle in the early 2000s (i.e., before 2004).  (Defs.' SMF ¶ 19 (citing Belle Dep. 87-90); see

---

[11] The FCSD did not provide sexual harassment training to its non-sworn personnel through P.O.S.T., although non-sworn personnel constitute one-third of its workforce. (PSAF re Defs. ¶ 91.)  The FCSD also provided no training regarding sexual harassment to non-sworn personnel through the Command Staff Training or Sheriff's Office Departmental Training.  (Id. ¶ 93.)

13

also Belle Dep. 91.)[12]  Following the OEEO's investigation of plaintiff's complaint against him (discussed infra Part I. H.), Lieutenant Wyatt also attended sexual harassment prevention training classes on August 28, 2008, and February 12, 2009. (Ann Harris Dep. [49] 86 (cited in Pl.'s Resp. Def.'s SMF ¶ 19); see also PSAF re Defs. ¶ 45.)

The parties dispute whether Captain Hull received information about the FCSD's sexual harassment policy during his In-Service Training sessions. (Compare Defs.' SMF ¶ 20, with Pl.'s Resp. Defs.' SMF ¶ 20; see also PSAF re Hull ¶ 32; PSAF re Defs. ¶ 76 (both asserting that Captain Hull did not attend sexual harassment training until 2009).)  This dispute is also not material.

Finally, in addition to In-Service Training and training mandated by P.O.S.T., Captain Wallace attended sexual harassment training over the course of her twenty-year employment with the FCSD.  (Defs.' SMF ¶ 21; Pl.'s Resp. Defs.' SMF ¶ 21.)

---

[12] Mr. Belle testified that when he teaches P.O.S.T. certified training classes on sexual harassment, officers from other jurisdictions are present; however, he always gives Fulton County employees (like Lieutenant Wyatt) a copy of the County's policy against harassment.  (Belle Dep. 88.)  The topics covered in this P.O.S.T. certified training are the same ones covered in Fulton County's mandated anti-sexual harassment training.  (Id. at 90.)

14

### 2.    Newly Hired Employees

Since 1997, it has been the policy of the FCSD that all newly hired permanent employees attending employee orientation training receive information about Fulton County's sexual harassment policy.  (Defs.' SMF ¶ 28.)  Although plaintiff does not controvert that assertion,[13] she shows that there have been problems in training newly hired employees about the policy.  For example, between 2003 and 2005, 249 newly-hired FCSD employees did not receive the mandatory sexual harassment training.  (Pl.'s Resp. Defs.' SMF ¶ 28 (citing Freeman Dep. Ex. 4 [39-4]).)  Any dispute over new hire training on the sexual harassment policy is not material.  Even if plaintiff (or others) were not trained, as shown infra, she registered her complaints about alleged inappropriate comments and conduct promptly and effectively.

---

[13] Indeed, plaintiff cannot do so since she received a copy of the sexual harassment policy at her new hire orientation.  (See text preceding note 9, supra.)

15

### 3.    Existing Employees[14]

Plaintiff contends that from 2002 to 2004, Fulton County developed and instituted mandatory sexual harassment training that all employees of the FCSD, including the Sheriff, were required to attend.  (PSAF re Defs. ¶ 78.)  However, plaintiff contends that the OEEO could not secure cooperation from the FCSD to have its employees attend that mandatory sexual harassment training.  (Id. ¶ 79.)  As of early 2004, the FCSD was the only department out of compliance with the county manager's directive regarding mandatory sexual harassment training.  More than ninety percent of the FCSD's employees had not been trained.  (Id. ¶ 84.)  In 2004, OEEO made numerous attempts to discuss its concerns with management in the FCSD, but to not avail.  (Id. ¶ 86.)  This lack of participation in the sexual harassment training led the OEEO's director to notify the county manager in 2004.  (Id. ¶¶ 88-89.)  Plaintiff further shows that, as of February 18, 2005, 605 of 606 non-

---

[14] The Court agrees with defendants' contention that most of the facts that plaintiff proposes about training of employees is not material.  (Defs.' Resp. PSAF ¶¶ 78-79, 81-96.)  As discussed infra, these proposed facts are immaterial because plaintiff was not subjected to a hostile work environment; thus, whether employees were or were not trained is irrelevant.  Nevertheless, the Court includes many of plaintiff's proposed facts for background purposes.

16

supervisory employees of the FCSD had not undergone the mandatory sexual harassment training.  (Id. ¶¶ 81, 83.)

In January 2006, Sheriff Freeman issued a memorandum to his staff encouraging them to take advantage of the OEEO's sexual harassment prevention training.  (Def.'s SMF ¶ 27 (citing Freeman Aff. [58-8] ¶ 15 & Ex. 4 (copy of January 2006 memorandum)).)[15]  Despite that encouragement, plaintiff shows that as of September 5, 2008, 343 employees of the FCSD had not undergone mandatory sexual harassment training.  (PSAF re Defs. ¶ 82.)

### D.    The Office of Equal Employment Opportunity

The OEEO has the responsibility for investigating all complaints of harassment, including sexual harassment.  (Defs.' SMF ¶ 29; Pl.'s Resp. Defs.' SMF ¶ 29.)  Although the OEEO does not have enforcement authority, at the conclusion

_____

[15] Although the training was not mandatory, plaintiff's denial does not controvert defendants' statement.  (See Pl.'s Resp. Defs.' SMF ¶ 27.)  Accordingly, the statement preceding this note is deemed admitted.  OEEO's Ann Harris met with Mr. Freeman in 2006 (or 2007) and informed him that the FCSD was not in compliance with the County's training requirement.  (PSAF re Defs. ¶ 90.)  Subsequently, a January 15, 2009 memorandum from OEEO notified the FCSD of its lack of participation in the mandatory sexual harassment training.  (Id. ¶ 92.)  OEEO apparently had concerns about the FCSD's lack of compliance with the training requirement throughout Sheriff Freeman's tenure in office.  (Id. ¶ 96.)

17

of an investigation, OEEO generally recommends action that should be taken by the relevant Department Director.  (Defs.' SMF ¶ 30; Pl.'s Resp. Defs.' SMF ¶ 30.)[16]

In addition to investigating harassment complaints, OEEO monitors the participation of each Department within Fulton County for its compliance with the sexual harassment training provided by OEEO.  (Defs.' SMF ¶ 32; Pl.'s Resp. Defs.' SMF ¶ 32.)  The OEEO cannot mandate that the Fulton County Sheriff, as an elected official, follow its recommendations regarding employees or specific training initiatives.  (Defs.' SMF ¶ 31.)[17]  During Sheriff Freeman's tenure, Ann Harris,

---

[16] Between 2002 and 2005, employees of the FCSD filed forty-one complaints of general harassment or discrimination.  (Defs.' SMF ¶ 34; Pl.'s Resp. Defs.' SMF ¶ 34.)  OEEO completed investigations on all of them and concluded that only three had merit.  (Defs.' SMF ¶ 35; Pl.'s Resp. Defs.' SMF ¶ 35 (denial deemed ineffective).)  In 2007, OEEO issued cause findings on three harassment cases.  In 2008, it issued cause findings in two harassment cases.  (Defs.' SMF ¶ 36; Pl.'s Resp. Defs.' SMF ¶ 36.)  Although plaintiff contends that OEEO was concerned about the number of sexual harassment complaints coming from the FCSD (PSAF re Defs. ¶¶ 85, 87), OEEO found virtually all of them to be without merit.  Morever, there is no evidence concerning the percentage of FCSD employees who filed complaints compared to the percentage of employees in other Fulton County departments who filed complaints.  The sheer number of complaints is meaningless without context.  Finally, the fact that FCSD employees were filing complaints obviously means that they knew about the sexual harassment policy's complaint procedure.

[17] The record cite plaintiff provides to support her denial fails to do so.  (See Pl.'s Resp. Defs.' SMF ¶ 31.)  Thus, the Court deems Defs.' SMF ¶ 31 admitted.

Deputy Director of OEEO, met with management of the FCSD at least once a year to discuss complaint filings by its personnel.  (Id. ¶ 33.)[18]

### E.    Plaintiff's Interaction with Lieutenant Wyatt

Plaintiff was off work on maternity leave from April 2007 through April 2008. (PSAF re Defs. ¶ 5.)[19]  About two months after her return to work, the FCSD assigned plaintiff to work in the watch commander's office.  (Id. ¶ 6; Defs.' Resp. PSAF ¶ 6.)  In September 2008, Lieutenant Wyatt served as Assistant Watch Commander at the Jail.  (Defs.' SMF ¶ 40; Pl.'s Resp. Defs.' SMF ¶ 40.)  Plaintiff thus came under Lieutenant Wyatt's direct supervision.  (Defs.' SMF ¶ 41; Pl.'s Resp. Defs.' SMF ¶ 41; see also PSAF re Defs. ¶ 7; Defs.' Resp. PSAF ¶ 7.)[20]

Plaintiff contends that, during the first week of September 2008, Lieutenant Wyatt called her into the watch commander's cubicle to talk about her attendance,

---

[18] The record cite plaintiff provides to support her denial fails to do so.  (See Pl.'s Resp. Defs.' SMF ¶ 33.)  Thus, the Court deems Defs.' SMF ¶ 33 admitted.

[19] The Court overrules defendants' objection that the fact contained in the sentence preceding this note is immaterial.  (Defs.' Resp. PSAF ¶ 5.)  It helps define the time period and context of Lieutenant Wyatt's alleged comments.

[20] Because Captain Wallace served as watch commander, both plaintiff and Lieutenant Wyatt were under her supervision.  (Defs.' SMF ¶ 42; Pl.'s Resp. Defs.' SMF ¶ 42.)  Plaintiff generally knew Lieutenant Wyatt from working at the Jail. (Defs.' SMF ¶¶ 37-38; Pl.'s Resp. Defs.' SMF ¶¶ 37-38.)

19

but once in that area, he grabbed her left breast and said that "the baby gave you big juicy tits and a big ass."  (Defs.' SMF ¶ 43; Pl.'s Resp. Defs.' SMF ¶ 43; <u>see also</u> (PSAF re Defs. ¶¶ 8-11; Defs.' Resp. PSAF ¶¶ 8-11.)[21]  In response, plaintiff asked Lieutenant Wyatt what he was doing, teared up, walked away, and went back to work.  (Defs.' SMF ¶ 45; Pl.'s Resp. SMF ¶ 45; <u>see also</u> Demmons Dep. 41-42.) Plaintiff contends that Lieutenant Wyatt's actions and comments humiliated her. (PSAF re Defs. ¶ 12.)[22]

_____

[21] There were no witnesses to Lieutenant Wyatt's alleged comment or conduct. (Defs.' SMF ¶ 44; Pl.'s Resp. Defs.' SMF ¶ 44.)  Plaintiff does not contend that Lieutenant Wyatt took any further objectionable action against her after this alleged incident.  (Defs.' SMF ¶ 48; Pl.'s Resp. Defs.' SMF ¶ 48.)  The Court excludes from the Statement of Facts plaintiff's accusations about Lieutenant Wyatt's history of harassing other females.  (<u>See</u> PSAF re Defs. ¶¶ 25-44.)  These proposed facts are not material to the Court's analysis of whether Lieutenant Wyatt's comment and conduct toward plaintiff created a hostile work environment for her.  These proposed facts are also not material because plaintiff abandoned any state law tort claims against defendants for negligent retention and supervision, etc.

[22] Plaintiff also contends that Lieutenant Wyatt's actions and comments caused her depression.  (PSAF re Defs. ¶ 13.)  However, as defendants accurately point out, the record cited to support that proposition (Demmons Dep. 173-74) shows that plaintiff blamed her depression on Captain Hull.

Plaintiff did not immediately report Lieutenant Wyatt's comment and conduct to any co-workers, Captain Wallace, or anyone at Fulton County. (Defs.' SMF ¶ 46.) She continued to work under Lieutenant Wyatt's supervision. (Id. ¶ 47.)[23]

### F.     Plaintiff Reports Lieutenant Wyatt to Captain Wallace

About a month later, on October 4, 2008, plaintiff told Sergeant Jerry Jones about Lieutenant Wyatt's comment and conduct. (Defs.' SMF ¶ 49; Pl.'s Resp. Defs.' SMF ¶ 49; see also PSAF re Defs. ¶¶ 18-20.) Sergeant Jones escorted Ms. Demmons to see Captain Wallace. (Defs.' SMF ¶ 50; Pl.'s Resp. Defs.' SMF ¶ 50; see also PSAF re Defs. ¶ 21.)

During a meeting with Captain Wallace, plaintiff reported Lieutenant Wyatt's comment and conduct. (Defs.' SMF ¶¶ 51-52; Pl.'s Resp. Defs.' SMF ¶¶ 51-52.) Captain Wallace responded by giving plaintiff a copy of Fulton County's sexual harassment policy, instructing her to detail her allegations in writing, and report them

---

[23] The record cites plaintiff provides, or the arguments she makes, do not support her denials. (See Pl.'s Resp. Defs.' SMF ¶¶ 46-47.) Thus, the Court deems Defs.' SMF ¶¶ 46-47 admitted.

21

directly to OEEO.  (Defs.' SMF ¶ 53; Pl.'s Resp. Defs.' SMF ¶ 53; <u>see also</u> PSAF re Defs. ¶ 22.)[24]

Captain Wallace prepared an incident report and sent it through her chain of command to her direct supervisors, Majors Loretha Banner and Skip Platt.  (Defs.' SMF ¶ 54; Pl.'s Resp. Defs.' SMF ¶ 54.)  Captain Wallace also transferred Ms. Demmons from Lieutenant Wyatt's supervision to Grady Detention pending an investigation into her allegations.  (Defs.' SMF ¶ 56; Pl.'s Resp. Defs.' SMF ¶ 56; <u>see also</u> PSAF re Defs. ¶ 24; Defs.' Resp. PSAF ¶ 24; Hull's SMF ¶ 2; Pl.'s Resp. Hull's SMF ¶ 2.)

### G.   Captain Wallace Issues Discipline to Plaintiff

As noted above, on October 4, 2008, Captain Wallace ordered plaintiff to report to work at Grady Detention.  (Demmons Dep. 80-81.)  Captain Wallace assumed that plaintiff would report there the next day–October 5.  (Wallace Dep.

---

[24] Plaintiff disputes defendants' contention that Captain Wallace gave her a copy of Fulton County's sexual harassment policy.  (<u>See</u> Pl.'s Resp. Defs.' SMF ¶ 53.)  This dispute is not material.  According to plaintiff, Captain Wallace said that she was printing a copy of the policy for her and then handed something to her. When plaintiff got home and looked at what she had received, she realized that Captain Wallace had printed the wrong policy.  However, the error was immaterial to plaintiff because Captain Wallace had told her that she had done the right thing by coming forward and had directed her to talk to OEEO.  (Demmons Dep. 79-81.)

22

129-32.)[25]  Plaintiff testified that, although Captain Wallace did not give her a date on which to report to Grady Detention, she also assumed that her superior meant for her to report there the next day.  (Demmons Dep. 85.)

However, plaintiff testified that she did not report there the next day because she was not feeling well.  (Demmons Dep. 85.)  Plaintiff testified that she was out of work for four days (or through October 9, 2008) per her doctor's instructions because she was ill.  (Pl.'s Resp. Defs.' SMF ¶ 59; PSAF re Defs. ¶ 46.)  According to defendants, plaintiff did not report to Grady Detention until October 11, 2008, some six days after Captain Wallace had expected her to be there.  (Defs.' SMF ¶ 59.)  Although plaintiff did not inform Captains Hull or Wallace that she would not be reporting to Grady Detention (Id. ¶ 60), she asserts that she followed FCSD procedure and called in to report that she would off work due to illness.  (PSAF re Defs. ¶ 47.)  As discussed infra note 26, these disputes are immaterial.

As a result of not reporting as directed, Major Banner directed Captain Wallace to recommend plaintiff be disciplined for insubordination.  (Defs.' SMF ¶ 61; Pl.'s Resp. Defs.' SMF ¶ 61.)  Thus, on November 5, 2008, Captain Wallace

_____

[25] The Court utilizes the record directly and not the summary provided in Defs.' SMF ¶ 57.

23

issued Ms. Demmons a written warning for Violation of PR–1800 ART. II(B),

Insubordination and Failure to carry out orders, failure or excessive delay in carrying

out work assignments or specific instructions of superiors when she failed to report

to Grady Detention pursuant to her order.  (Defs.' SMF ¶ 62; Pl.'s Resp. Defs.' SMF

¶ 62.)[26]

### H.    Plaintiff's Complaint to OEEO About Lieutenant Wyatt

On October 15, 2008, plaintiff filed an internal complaint of sexual harassment

against Lieutenant Wyatt with OEEO.  (Defs.' SMF ¶ 63; Pl.'s Resp. Defs.' SMF ¶

63.)  OEEO investigator Sarah Harper promptly commenced an investigation into

plaintiff's allegations.  (Defs.' SMF ¶ 64; Pl.'s Resp. Defs.' SMF ¶ 64.)  Lieutenant

Wyatt denied plaintiff's allegations.  (Defs.' SMF ¶ 65; Pl.'s Resp. Defs.' SMF ¶

65.)  Ms. Harper's investigation revealed that there were no witnesses to Lieutenant

Wyatt's alleged comment or conduct.  (Defs.' SMF ¶ 66; Pl.'s Resp. Defs.' SMF ¶

---

[26] Plaintiff could cited issuance of this discipline as support for her Title VII retaliation claim.  However, because plaintiff abandoned that claim, any factual disputes over whether plaintiff reported four or six days late, whether she failed to report as directed, or whether she followed the call-in procedure, are immaterial.

24

66.)  Based on its investigation, OEEO concluded that plaintiff's allegations against Lieutenant Wyatt were unsubstantiated.  (Defs.' SMF ¶ 67.)[27]

**I.      Plaintiff's Interaction With Captain Hull**

When plaintiff reported to Grady Detention, her supervisor was Captain Hull. (PSAF re Defs. ¶ 48; Defs.' Resp. PSAF ¶ 48; see also PSAF re Hull ¶ 5; Hull's Resp. PSAF ¶ 5.).)[28]  Plaintiff contends that in October 2008, Captain Hull told her since "she gave birth to several babies her vagina was so large that during sexual intercourse a man's penis could not touch the sides."  (Defs.' SMF ¶ 70; Pl.'s Resp.

---

[27] Plaintiff obviously disagrees with the result of the OEEO's investigation, and denies the statement preceding this note.  (See Pl.'s Resp. Defs.' SMF ¶ 67.) However, she cites no record evidence supporting her denial.  Moreover, even if the OEEO may have been wrong (as plaintiff contends), the undisputed fact is that the OEEO found no merit in her allegations against Lieutenant Wyatt.  Thus, the Court deems Defs.' SMF ¶ 67 admitted.

[28] The Court excludes from the Statement of Facts plaintiff's accusations about Captain Hull's history of harassing other females.  (See PSAF re Hull ¶¶ 16-28; PSAF re Defs. ¶¶ 60-72.)  These proposed facts are not material to the Court's analysis of whether Captain Hull's comment toward plaintiff created a hostile work environment for her.  These proposed facts are also not material because plaintiff abandoned any state law tort claims against defendants for negligent retention and supervision, etc.

25

Defs.' SMF ¶ 70; <u>see also</u> PSAF re Defs. ¶ 49; Defs.' Resp. PSAF ¶ 49; Hull's SMF ¶ 3; Pl.'s Resp. Hull's SMF ¶ 3; PSAF re Hull ¶ 6; Hull's Resp. PSAF ¶ 6.)[29]

After hearing Captain Hull's comment, plaintiff was humiliated and walked out of the room in tears. (PSAF Hull ¶ 7; Hull's Resp. PSAF ¶ 7;[30] <u>see also</u> PSAF re Defs. ¶ 50.) The next day, plaintiff was still upset and crying about Captain Hull's comment. (PSAF Hull ¶ 8; Hull's Resp. PSAF ¶ 8; <u>see also</u> PSAF re Defs. ¶ 51.) A Lieutenant Gibson saw plaintiff crying, and asked her what was the matter. She

---

[29] The parties disagree over whether this was the first inappropriate comment that Captain Hull had made to plaintiff. (<u>Compare</u> Hull's SMF ¶ 4, <u>with</u> Pl.'s Resp. Hull's SMF ¶ 4.) Ms. Demmons testified that Captain Hull once said that he would "get [her] jaws." (PSAF re Defs. ¶ 74; PSAF re Hull ¶ 30 (both citing Demmons Dep. 119-20). She added that she did not understand what he meant by that comment. (Demmons Dep. 119.) This dispute is not material, because no reasonable jury could find that this comment (which plaintiff did not understand) constituted sexual harassment. Plaintiff also contends that while working under Captain Hull's supervision, she heard him comment that she had a nice figure. (PSAF re Hull ¶ 29; PSAF re Defs. ¶ 73.) That proposed fact is also immaterial. Finally, the Court sustains Captain Hull's hearsay objection to PSAF re Hull ¶ 31 and PSAF re Defs. ¶ 75. (<u>See</u> Hull's Resp. PSAF ¶ 31.)

[30] The Court overrules Captain Hull's objection to part of PSAF Hull ¶ 7. (<u>See</u> Hull's Resp. PSAF ¶ 7.) At the page of the record cited to support her assertion (Demmons Dep. 92), plaintiff did not testify that she was humiliated by Captain Hull's comment. However, when viewing the evidence in a light most favorable to Ms. Demmons, it is fair to conclude that a woman hearing that type of comment would likely be humiliated by it. (<u>See also</u> Demmons Dep. 173 (asserting that Captain Hull's comment made her embarrassed around co-workers).)

26

then told him about Captain Hull's comment.[31]  (PSAF Hull ¶ 9; Hull's Resp. PSAF ¶ 9; see also PSAF re Defs. ¶ 52.)  Lieutenant Gibson called Captain Hull, who then talked with plaintiff over the telephone and apologized for the comment he had made.  (PSAF Hull ¶ 10; Hull's Resp. PSAF ¶ 10; see also PSAF re Defs. ¶ 53.)[32] Plaintiff rejected Captain Hull's apology.  (PSAF Hull ¶ 11; Hull's Resp. PSAF ¶ 11; see also PSAF re Defs. ¶ 54.)  Plaintiff claims that Captain Hull's inappropriate comment caused her hurt and depression.  (PSAF re Defs. ¶ 58; PSAF Hull ¶ 15; Hull's Resp. PSAF ¶ 15; see also Hull's SMF ¶ 14; Pl.'s Resp. Hull's SMF ¶ 14.)[33]

### J.    Plaintiff's EEOC Charge and the OEEO Investigation

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 8, 2009.  (Defs.' SMF ¶ 72; Pl.'s

---

[31] Plaintiff accuses Captain Hull of making only one inappropriate comment to her.  She concedes that he never put his hands on her and never asked her out socially.  (Hull's SMF ¶¶ 7-8; Pl.'s Resp. Hull's SMF ¶¶ 7-8.)

[32] Although he apologized, Captain Hull denies that he ever made the alleged inappropriate comment.  (Hull's SMF ¶ 6; Pl.'s Resp. Hull's SMF ¶ 6.)

[33] Although plaintiff denies Mr. Hull's summary of the facts about her claimed depression, a comparison of their assertions and the record shows that they are not in dispute.

Resp. Defs.' SMF ¶ 72.)[34]  Ms. Harper of the OEEO first learned of plaintiff's allegations against Captain Hull when she received a copy of that EEOC charge. (Defs.' SMF ¶ 73; Pl.'s Resp. Defs.' SMF ¶ 73.)  After learning of Ms. Demmons's allegations against Captain Hull, Ms. Harper began an investigation.  (Defs.' SMF ¶ 74; Pl.'s Resp. Defs.' SMF ¶ 74; see also PSAF re Defs. ¶ 55; PSAF Hull ¶ 12; Hull's Resp. PSAF ¶ 12.)  In response to the inquiry by the OEEO, Captain Hull denied making an inappropriate comment to Ms. Demmons.  (Defs.' SMF ¶ 75.)[35] Based on the investigation by the OEEO, there was no evidence to substantiate plaintiff's allegations against Captain Hull.  (Defs.' SMF ¶ 77; Pl.'s Resp. Defs.' SMF ¶ 77; see also Hull's SMF ¶ 5.)[36]

---

[34] The EEOC charge alleging hostile environment sexual harassment and retaliation includes plaintiff's allegations against Lieutenant Wyatt and Captain Hull. (See Demmons Dep. Ex. 7 [58-3 at 42].)

[35] Plaintiff denies the statement preceding this note, but cites only to her testimony that Captain Hull apologized to her for his comment.  (Pl.'s Resp. Defs.' SMF ¶ 75.)  The Court has already pointed out this incongruity between Captain Hull's apology and his denial.  (See supra note 32.)  However, the record shows that he denied making the comment to the OEEO; thus, the Court deems the above statement admitted.

[36] Plaintiff claimed that Detention Officer Brandon Robertson and Deputy Sheriff Sandra Jackson overheard Captain Hull's inappropriate comment to her. (Defs.' SMF ¶ 71; Pl.'s Resp. Defs.' SMF ¶ 71.)  However, both of them denied witnessing any interaction between them.  (Defs.' SMF ¶ 76; Pl.'s Resp. Defs.' SMF

**K.**   **Plaintiff's Transfer Back to the Jail**

Plaintiff continued to work at the Grady Detention Unit until January or February 2009, when she was transferred back to the Jail.  (Hull's SMF ¶ 11; Pl.'s Resp. Hull's SMF ¶ 11; see also PSAF re Defs. ¶ 56; PSAF Hull ¶ 13; Hull's Resp. PSAF ¶ 13.)  Ms. Demmons did not suffer any loss of pay as a result of Captain Hull's alleged comment.  (Hull's SMF ¶ 15; Pl.'s Resp. Hull's SMF ¶ 15.)  Plaintiff did not consider working at the Jail to be punishment.  (Defs.' SMF ¶ 80; Pl.'s Resp. Defs.' SMF ¶ 80.)[37]  After she returned to the Jail, Ms. Demmons had no further interaction with Lieutenant Wyatt.  (Defs.' SMF ¶ 58.)[38]

**II.**   **SUMMARY JUDGMENT STANDARD**

Summary judgment should be "rendered if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

¶ 76.)  Thus, the Court rejects plaintiff's denial of Hull's SMF ¶ 5.  (See Pl.'s Resp. Hull's SMF ¶ 5.)

[37] In lieu of termination, Captain Hull resigned his employment with the FCSD on June 5, 2009.  (Defs.' SMF ¶ 78; Pl.'s Resp. Defs.' SMF ¶ 78; see also PSAF re Hull ¶ 33; PSAF re Defs. ¶ 77.)

[38] Plaintiff's denial of the fact preceding this note is unsupported.  (Pl.'s Resp. Defs.' SMF ¶ 58.)  Thus, the Court deems it admitted.

Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986)).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party then "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); see also Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (non-movant then required "to go beyond the pleadings" and present competent evidence in form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial").  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  If in response the non-moving party does not sufficiently

30

support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255, 106 S. Ct. at 2513); see also Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994) ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.") (citation and quotation marks omitted).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251, 106 S. Ct. at 2511-12. The applicable substantive law will identify those facts that are material. Id. at 248, 106 S. Ct. at 2510. Facts that are disputed, but which do not affect the outcome of the case, are

31

not material and thus will not preclude the entry of summary judgment. <u>Id.</u> Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> For factual issues to be "genuine," they must have a real basis in the record. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." <u>Id.</u> at 587, 106 S. Ct. at 1356.

## III.   <u>ANALYSIS</u>

As noted above, defendants Fulton County, Freeman, and Wallace filed a motion for summary judgment, while defendant Hull filed his own. Defendant Wyatt has not been served. After recommending dismissal of Lieutenant Wyatt (<u>see infra</u> Part III. A.), the undersigned addresses the separate motions below.

### A.   <u>Defendant Wyatt</u>

The Notice of Removal asserts that plaintiff served Fulton County on July 24, 2009, Mr. Freeman on July 27, 2009, Mr. Hull on July 28, 2009, and Ms. Wallace on August 6, 2009, but states that, upon information and belief, Mr. Wyatt had not been served as of its filing. (Notice of Removal ¶ 2.) Mr. Wyatt had still not been served as of the filing of the Joint Preliminary Report and Discovery Plan [13] on

October 1, 2009.  The docket does not reflect that Mr. Wyatt has been served since that date.  Plaintiff was required to serve Mr. Wyatt with a summons and a copy of the Complaint within 120 days of the date the action was removed to federal court. Fed. R. Civ. P. 4(c)(1), (m); see also Yaman v. D'Angelo, 206 F. Supp. 2d 394, 401 (W.D.N.Y. 2002).  Given that failure of service, and no showing by plaintiff of good cause excusing that failure and requiring an extension of that deadline, the undersigned **RECOMMENDS** that defendant Wyatt be **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 4(m).

### B.   Defendants Fulton County, Freeman, and Wallace's Motion for Summary Judgment

#### 1.   Abandoned Claims

Defendants seek entry of summary judgment in their favor on the numerous federal and state law claims that plaintiff made against them.  However, plaintiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment [63] did not respond to defendants' arguments that summary judgment be granted to them:

(1)   on plaintiff's Title VII retaliation claim (Count III) because it fails as a matter of law;

33

(2)     on plaintiff's § 1983/Equal Protection claim (Count II) asserted against Mr. Freeman and Ms. Wallace in their *individual capacities* because they enjoy qualified immunity;

(3)     on plaintiff's § 1983/Equal Protection claim (Count II) asserted against Mr. Freeman and Ms. Wallace in their *official capacities* because that claim duplicates her claim against Fulton County;[39] and

(4)     on the various state law tort claims that plaintiff made against Fulton County, Mr. Freeman, and/or Ms. Wallace, i.e., Count V (hostile work environment), Count VI (ratification), Count XI (negligent retention and supervision of defendant Wyatt), and Count XII (negligent retention and supervision of defendant Hull), on the grounds of sovereign and/or official immunity.[40]

---

[39] A § 1983 suit against a government official in his official capacity is deemed a suit against the entity that he represents.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009); Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (per curiam).  Thus, plaintiff's suit against defendants Freeman and Wallace in their official capacities is the functional equivalent of suing Fulton County and is, therefore, redundant.  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam).  Accordingly, official capacity claims against individual defendants are unnecessary when their employer (or former employer) is a named defendant.  See Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1270 (11th Cir. 2005) (summary judgment on official capacity claims against police officers proper when their employer was a defendant); Cipriani v. Fulton County, No. 1:07-CV-0069-CAP, 2008 WL 7070790, at *2 (N.D. Ga. Nov. 18, 2008) (Section 1983 claims against Sheriff Freeman and two deputies in their official capacities redundant of claims against Fulton County and dismissed under Fed. R. Civ. P. 56).

[40] "As a political subdivision of Georgia, a county and its officers sued in their official capacities have the same sovereign immunity protection as the state."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1197 n.36 (11th Cir. 1994).  A county may not be held liable unless made so by statute, and the intention to waive sovereign immunity and impose liability must be clear from the statute's face.

Failure to respond to an opposing party's argument constitutes abandonment of that claim and warrants its dismissal. Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D. Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."). Given plaintiff's failure to respond, the undersigned **RECOMMENDS** that summary judgment be entered for defendants Fulton County, Freeman, and Wallace on the above-listed claims.

Additionally, although the following argument was raised by defendant Hull and not by Mr. Freeman and Ms. Wallace, the undersigned **RECOMMENDS** entry of summary judgment for Mr. Freeman and Ms. Wallace on plaintiff's Title VII claims (both sexual harassment (Count I) and retaliation (Counts III)) because

---

O.C.G.A. § 36-1-4. Any waiver of sovereign immunity must be established by the party seeking to benefit from that waiver. Butler v. Carlisle, 683 S.E.2d 882, 887 (Ga. Ct. App. 2009). As for official immunity, "public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." Phillips v. Walls, 529 S.E.2d 626, 628 (Ga. Ct. App. 2000). A plaintiff must allege and prove actual malice to overcome a defense of official immunity. Merrow v. Hawkins, 467 S.E.2d 336, 338 (Ga. 1996). Actual malice requires a deliberate intention to do wrong in the performance of official duties. Id.

35

individuals cannot be sued under that statute.  Busby, 931 F.2d at 772 ("[T]he relief granted under Title VII is against the employer," and not against others whose actions might constitute a violation of the Act); see also 42 U.S.C. § 2000e(b) (definition of "employer"); 42 U.S.C. § 2000e-2 (violation for "employer" to discriminate).  Thus, these two individuals (i.e., Mr. Freeman and Ms. Wallace) are not proper defendants in a Title VII claim.[41]

### 2. Plaintiff's § 1983/Equal Protection and Title VII Sexual Harassment Claims Against Fulton County

The recommended dismissal of those abandoned and improvidently filed claims leaves only the following claims against Fulton County: Count I–hostile work environment sexual harassment in violation of Title VII and Count II–hostile work environment sexual harassment in violation of the Constitution's Equal Protection Clause (as enforced through § 1983).[42]  The elements of a sexual harassment claim

---

[41] Although not argued by any defendant, plaintiff named only Fulton County as respondent in her EEOC charge.  (Harper Aff. [58-12] Ex. 5 (Demmons EEOC Charge).)  "Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action."  Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994); see also 42 U.S.C. § 2000e-5(f)(1) ("a civil action may be brought against the respondent named in the charge").  Thus, plaintiff's failure to name these individuals in her charge bars a Title VII action against them here.

[42] Section 1983 does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff "was deprived of a

under the Equal Protection Clause are the same as the elements under Title VII. Cross v. State of Ala., 49 F.3d 1490, 1508 (11th Cir. 1995); see also Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1275 n.5 (11th Cir. 2008) ("Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts."). Therefore, the Court considers these claims in tandem.[43]

---

federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

[43] Fulton County asserts certain defenses specific to a § 1983 claim. (See Defs.' Br. [56-1] 2-15.) The undersigned does not specifically address those contentions herein, because it is clear that plaintiff was not deprived of a federal right (i.e., there was no Equal Protection violation because there was no hostile work environment). However, should the District Court disagree, the undersigned concludes that summary judgment should nevertheless be granted to Fulton County. A county cannot be held liable under respondeat superior. Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79, 106 S. Ct. 1292, 1297-98 (1986). Recovery is limited to acts of the governmental body which it has officially sanctioned or ordered. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991); see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997) (plaintiff must show that through its deliberate conduct, governmental body was the moving force behind his injury). Thus, for Fulton County to be held liable under § 1983, plaintiff must prove that it had a policy or custom that violated her Constitutional rights. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989). Plaintiff may demonstrate that a policy or custom exists by identifying: (1) an officially promulgated policy; (2) an unofficial custom or practice shown through repeated acts of a final policymaker, Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc); or (3) an action by a decisionmaker who "'possesses *final authority* to establish *municipal policy* with respect to the action ordered.'" Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (quoting Pembaur, 475 U.S. at 481, 106 S. Ct. at

In a sexual harassment claim, the Court examines a workplace environment as a whole to determine if it is hostile or abusive. <u>Harris v. Forklift Sys. Inc.</u>, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993). That determination is made by examining all the circumstances, including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>Id.</u>; <u>see also Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65, 106 S. Ct. 2399, 2405 (1986).

In line with that Supreme Court authority, the Eleventh Circuit has established the following five factors an employee must prove to establish existence of a sexually hostile working environment: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive

---

1299) (emphasis added in <u>Quinn</u>). Plaintiff failed to establish the existence of any policy or custom by Fulton County that would support § 1983 liability. Mere failure to train employees about the sexual harassment policy is insufficient. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350-51 (11th Cir. 1998).

38

working environment; and (5) a basis for holding the employer liable.  Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).[44]

The Court assumes that plaintiff has satisfied the first three elements listed above.  With regard to element four, the Eleventh Circuit holds that harassment is "severe or pervasive" for Title VII purposes only if it is both subjectively and objectively so.  Mendoza, 195 F.3d at 1246.  Harassment is *subjectively* severe and pervasive if the complaining employee perceives the harassment as severe or

---

[44] With regard to factor five–employer liability–one must categorize the type of harassment that occurred and the status of the individual accused of misconduct. Harassment falls into two categories:  (1) harassment that does not result in tangible job detriment to the claimant and (2) harassment that does result in tangible job detriment.  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000).  Tangible job detriment is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Id. at 512 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998)).  Harassment by a supervisor (which is alleged here) may fall into either category.  If the supervisor caused the victim tangible job detriment, then the employer is strictly responsible under principles of vicarious liability . Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002).  If, however, the supervisor took no tangible job action against the victim, then the employer may escape liability if it can successfully prove a two-pronged affirmative defense.  Id. Under this affirmative defense, the employer is not liable if it "'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and [the employee] 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the employer] or to avoid harm otherwise.'"  Id. (quoting Faragher v. City of Boca Raton, 524 U.S.775, 807, 118 S. Ct. 2275, 2293 (1998)).

pervasive.  There is no doubt that plaintiff subjectively perceived the comment and conduct of Lieutenant Wyatt and the comment of Captain Hull as severe or pervasive.

Harassment is *objectively* severe or pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe or pervasive.  Mendoza, 195 F.3d at 1246.  When determining whether harassment is objectively severe or pervasive, a court must consider the following elements: (1) The frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance.  Id.

As discussed below, the alleged harassment by Messrs. Wyatt and Hull was not objectively severe or pervasive.[45]  For example, the conduct or comments were not frequent (element one).  There were only two occurrences during plaintiff's seven years of employment with the FCSD (from her hiring in 2001 to the incidents in 2008).

_____

[45] As discussed above, Lieutenant Wyatt grabbed plaintiff's left breast and said that "the baby gave you big juicy tits and a big ass."  Captain Hull told her since "she gave birth to several babies her vagina was so large that during sexual intercourse a man's penis could not touch the sides."

40

As for the second element–severity–Captain Hull only made one comment. Likewise, Lieutenant Wyatt made just one comment, but he also grabbed plaintiff's breast. "Generally speaking, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1285 (11th Cir. 2003) (per curiam) (quoting Faragher, 524 U.S. at 788, 118 S. Ct. at 2283) (internal quotations omitted); Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d. Cir. 2001) (holding that single incident of rape would be sufficiently severe to alter the conditions of the victim's employment, creating abusive work environment for purposes of Title VII). The issue is whether a single incident of breast touching by Lieutenant Wyatt is "extremely serious." In a similar case where a co-employee touched the plaintiff's breast, the Ninth Circuit held that is was not. See Brooks v. City of San Mateo, 229 F.3d 917, 926 (9th Cir. 2000) (explaining that, "[i]f a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe.").[46] The law does not impose a "general civility code for the American

---

[46] The one-time touch here compares with Hall v. Gus Constr. Co., 842 F.2d 1010, 1012 (8th Cir. 1988), where the court held that the plaintiffs established a sexually hostile working environment through evidence of constant, sexually-explicit language, male employees exposing themselves to plaintiffs, and male employees holding plaintiffs down so that other male employees could touch the women's

41

workplace" <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998); thus, an "isolated incident" like Lieutenant Wyatt's touching of plaintiff's breast will not satisfy the severe or pervasive harassment requirement. See <u>Faragher</u>, 524 U.S. at 788, 118 S. Ct. at 2283.[47]

_____

breasts and legs.

[47] Examples of cases in which conduct was found sufficiently severe or pervasive include: <u>Hulsey v. Pride Restaurants., LLC</u>, 367 F.3d 1238, 1247-49 (11th Cir. 2004) (employee presented enough evidence for a jury to conclude that the following conduct of male supervisor over a two to three week period was objectively severe or pervasive: (1) multiple direct and indirect proposals for sex; (2) repeated attempts to touch her breasts, place his hands down her pants, or pull off her pants; (3) following her into the bathroom; and (4) enlisting help from others while he attempted to grope her); <u>Johnson</u>, 234 F.3d at 506-07, 509 (radio co-host who also served as plaintiff's supervisor engaged in conduct that was sufficiently severe or pervasive  when in a four month period he repeatedly told plaintiff she had a sexy voice, called out plaintiff's name and pulled his pants up in an obscene manner so plaintiff could see the imprint of his private parts, repeatedly attempted to massage plaintiff's shoulders against her wishes, stuck his tongue out in an obscene manner, rubbed his "body parts" against plaintiff and commented about sex to plaintiff and asked her about her sex life); <u>Dees v. Johnson Controls World Service, Inc.</u>, 168 F.3d 417, 418, 422 n.12 (11th Cir. 1999) (actions of Fire Chief and Assistant Chief and two other supervisory personnel toward plaintiff on a daily basis over about a three year period, including sexually explicit jokes, comments about her body, requests to sit on their laps, and on one occasion, when plaintiff refused, the Assistant Chief picking her up and squeezing her so hard she urinated in her pants, one occasion where one of the supervisors ground his groin into plaintiff's buttocks while stating "look at that sexy mama, I could just eat you in that skirt," multiple propositions for sex, and repeated incidents of grabbing and slapping plaintiff's buttocks and leg, were sufficiently severe or pervasive); and <u>Splunge v. Shoney's, Inc.</u>, 97 F.3d 488, 489 (11th Cir. 1996) (severe or pervasive hostile environment existed where four

As for the fourth element, the two comments by Messrs. Wyatt and Hull were mere offensive utterances; neither comment was physically threatening (although plaintiff claims the comments were humiliating).   As for Lieutenant Wyatt's touching of plaintiff's breast, although highly inappropriate, it was not physically threatening.

Finally, with regard to the fifth element, there is no probative evidence that either the comments or the single act of touching plaintiff's breast unreasonably interfered with her job performance.  She immediately returned to work after both alleged incidents.  Although she may have been upset, there is no evidence that she could not do her job.[48]

In sum, the undisputed material facts show that plaintiff's workplace was not abusive as a matter of law.  Thus, there is no liability for Fulton County under either Title VII (because the statute was not violated) or § 1983 (because there was no Equal Protection Clause violation).  Accordingly, summary judgment should be

_____

managers of restaurant "grabbed Plaintiffs, commented extensively on their physical attributes, showed them pornographic photos and videotapes, offered them money for sex, favored other employees who had affairs with them, [and] speculated as to the plaintiffs' sexual prowess").

[48] Plaintiff's failure to establish that her workplace was abusive obviates the need to discuss the fifth factor–employer liability.  (See supra note 44.)

43

**GRANTED** to Fulton County on plaintiff's Title VII (Count I) and § 1983/Equal Protection (Count II) claims.

### C.    Defendant Hull's Motion for Summary Judgment

#### 1.    Abandoned Claims

Defendant Hull also seeks entry of summary judgment on the numerous federal and state law claims that plaintiff made against him.  However, plaintiff's Memorandum of Law in Response to Defendant Jerome Hull's Motion for Summary Judgment [68-1] did not respond to defendant's arguments that summary judgment be granted to him:

(1)    on plaintiff's Title VII claim (Count I) because individuals cannot be sued under that statute (see text preceding note 41, supra);

(2)    on plaintiff's § 1983/Equal Protection claim (Count II) asserted against him in his *official capacity* because that claim duplicates the claim made against Fulton County (see supra note 39); and

(3)    on the various state law tort claims that plaintiff made against him, i.e., Count V (hostile work environment), Count IX (intentional infliction of emotional distress), and Count X (negligent infliction of emotional distress), on the grounds of sovereign and/or official immunity (see supra note 40)

44

Given plaintiff's failure to respond to these arguments, the undersigned **RECOMMENDS** that summary judgment be entered for defendant Hull on these abandoned claims.

### 2.   Remaining Issues

Although plaintiff did not respond to defendant Hull's contention that all of her state law tort claims against him are barred by sovereign and/or official immunity (thus abandoning them), she nevertheless asserts that disputed issues of material fact exist on her intentional infliction of emotional distress ("IIED") claim.  (See Pl.'s Resp. to Hull's Mot. Summ. J. 9-11.)  Despite abandonment of that IIED claim, the Court nevertheless addresses it infra.  The Court then addresses plaintiff's § 1983/Equal Protection claim against defendant Hull.[49]

---

[49] Defendant Hull also argues that he is entitled to qualified immunity to the § 1983 claim plaintiff made against him in his individual capacity.  Qualified immunity shelters government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  The doctrine "balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. – , 129 S. Ct. 808, 815 (2009).  In Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), the Eleventh Circuit directed District Courts to apply the two-part test prescribed in Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  Under that test, a plaintiff must (1) show that the defendant violated

### a.      **Plaintiff's IIED Claim Against Defendant Hull**

"In order to recover for intentional infliction of emotional distress under Georgia law, a plaintiff must prove: (1) that the defendant engaged in intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and plaintiff's emotional distress; and (4) that plaintiff's emotional distress is severe." Gathright-Dietrich v. Atlanta Landmarks, Inc., No. 1:02-CV-1978-WSD, 2003 WL 1964799, at *2 (N.D. Ga. Apr. 22, 2003).

Whether a claim rises to the requisite level of outrageousness and egregiousness is a question of law to be determined by the court. Cook v. Covington Credit of Ga., Inc., 660 S.E.2d 855, 858 (Ga. Ct. App. 2008). Discriminatory conduct, standing alone, is not sufficient to sustain an IIED claim. See Atakpa v. Perimeter OB-GYN Assocs., P.C., 912 F. Supp. 1566, 1577 (N.D. Ga. 1994). Liability has been found only where the defendant's conduct was so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

─────────────────

a constitutional right and (2) demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act. Bryant, 575 F.3d at 1295. However, there is no need to go through the qualified immunity analysis here because, as shown infra, plaintiff has failed to show that defendant Hull violated her constitutional right to equal protection.

46

atrocious, and utterly intolerable in a civilized society.  Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 868 (Ga. Ct. App. 2001).

Plaintiff testified that Captain Hull made a lewd remark to her.  However, that remark, although highly inappropriate, could not reasonably be characterized as extreme and outrageous.  See Galloway v. GA Tech. Auth., 182 F. App'x 877, 883 (11th Cir. 2006) (per curiam) ("Derogatory comments made in the workplace generally do not rise to this level and are usually considered 'a common vicissitude of ordinary life.'") (quoting Jarrard v. United Parcel Serv., 529 S.E.2d 144, 146 (Ga. Ct. App. 2000)); see also Moe Dreams, LLC v. Sprock, No. 1:08-CV-0196-RWS, 2008 WL 4787493, at *9 (N.D. Ga. Oct. 27, 2008) (dismissing IIED claim where plaintiffs "failed to allege conduct that could reasonably be characterized as extreme and outrageous"); Mangrum v. Republic Indus., Inc., 260 F. Supp. 2d 1229, 1256 (N.D. Ga. 2003) (granting summary judgment on IIED claim where alleged harasser exposed his sexual organs to plaintiff).

Moreover, plaintiff fails to submit probative evidence that any distress she may have suffered as a result of Captain Hull's comment was severe.  Quarles v. McDuffie County, 949 F. Supp. 846, 855-56 (S.D. Ga. 1996) (summary judgment granted because plaintiff produced no evidence beyond her own assertions to support

47

her claim that she suffered severe emotional distress); <u>see also</u> <u>Witter v. Delta Air Lines, Inc.</u>, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997) (alleged symptoms of emotional distress, including anxiety, sleeplessness, overeating, diarrhea and headaches, while not minor, clearly not of the type that no reasonable man could be expected to endure), <u>aff'd</u>, 138 F.3d 1366 (11th Cir. 1998).  Without any evidence of severe emotional distress, the Court should not allow plaintiff to take this claim before the jury.  Therefore, the undersigned **RECOMMENDS** that Defendant Hull's Motion for Summary Judgment on plaintiff's intentional infliction of emotional distress claim be **GRANTED**.

### b.    <u>Plaintiff's § 1983/Equal Protection Claim</u>

In a § 1983 claim, a plaintiff must prove that an act or omission by a person acting under color of state law deprived her of a right, privilege, or immunity secured by the Constitution and laws of the United States.  <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1581 (11th Cir. 1995).  Defendant Hull is a "person" for purposes of § 1983 when sued in his individual capacity.  <u>Greffey v. State of Ala. Dept. of Corr.</u>, 996 F. Supp. 1368, 1378 (N.D. Ala. 1998) (citing <u>Hafer v. Melo</u>, 502 U.S. 21, 31, 112 S. Ct. 358, 365 (1991)).  Moreover, Captain Hull does not contest that, as a Fulton County employee and plaintiff's supervisor while she worked at Grady

48

Detention, he acted under color of law.  Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1522-23 (11th Cir. 1995) (state employment generally sufficient to render defendant a state actor); see also Albra v. City of Fort Lauderdale, 232 F. App'x 885, 889 (11th Cir. 2007) (per curiam) (defendant police officers and city employees were "acting under color of state law, given that they were acting in their capacity as employees of the City"); David v. City & County of Denver, 101 F.3d 1344, 1354 (10th Cir. 1996) ("to establish the state action necessary to support a § 1983 [Fourteenth Amendment sexual harassment claim], [the defendant] had to be plaintiff's supervisor or in some other way exercise state authority over her") (quotations and citations omitted).

However, for the reasons explained in Part III. B. 2. supra, Captain Hull cannot be held liable for creating a hostile work environment through the sole comment plaintiff alleges against him. As noted above, hostile work environment sexual harassment may be established where the offensive conduct is so severe or pervasive as to alter the employee's working conditions.  Ellerth, 524 U.S. at 743, 118 S. Ct. at 2259; Meritor, 477 U.S. at 67, 106 S. Ct. at 2405.  Because the law does not impose a "general civility code for the American workplace" this isolated comment, although offensive and inappropriate, does not satisfy the severe or

49

pervasive requirement.  <u>Oncale</u>, 523 U.S. at 80, 118 S. Ct. at 1002; <u>see also</u> <u>Faragher</u>, 524 U.S. at 788, 118 S. Ct. at 2283 ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'").

IV.   **CONCLUSION**

For the reasons stated above, the undersigned **RECOMMENDS** that

Defendant Captain Jerome Hull's Motion for Summary Judgment [56] be **GRANTED**;

Defendants Fulton County, Former Sheriff Myron Freeman and Captain Benita Wallace's Motion for Summary Judgment [58] be **GRANTED**; and defendant Ronnie Wyatt be **DISMISSED WITHOUT PREJUDICE**.

**SO RECOMMENDED**, this 2nd day of August, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

50

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REKEISHA DEMMONS,

        Plaintiff,

    v.

FULTON COUNTY, d/b/a the Fulton
County Sheriff's Department,
MYRON E. FREEMAN, individually and in
his official capacity as the former Fulton
County Sheriff,
LIEUTENANT RONNIE WYATT,
individually and in his official capacity as
Lieutenant of Fulton County Sheriff's
Department,
CAPTAIN JEROME HULL, individually
and in his official capacity as Captain of the
Fulton County Sheriff's Department, and
CAPTAIN BENITA WALLACE,
individually and in her official capacity as
Captain of the Fulton County Sheriff's
Department,

        Defendants.

CIVIL ACTION FILE

NO.  1:09-CV-2312-TWT-WEJ

## ORDER FOR SERVICE OF
## FINAL REPORT AND RECOMMENDATION

    Let this Final Report and Recommendation of the United States Magistrate

Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil

Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together

with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within fourteen (14) days of the receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court, and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 2nd day of August, 2010.


_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2

AO 72A
(Rev.8/82)